**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    ARCHIE LEE GATES,                          No. C-12-1429 EMC

9              Plaintiff,

10         v.                                   **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANTS'
11   ALAMEDA COUNTY SHERIFF'S                   MOTION TO DISMISS; AND DENYING
     DEPARTMENT, *et al.*,                      PLAINTIFF'S MOTION FOR LEAVE
                                                TO FILE A MOTION FOR
12                                              RECONSIDERATION
              Defendants.
13   _____/        (Docket Nos. 21, 22)

14

15

16         Plaintiff Archie Lee Gates, a *pro se* litigant, has filed suit against Defendant Alameda

17   County Sheriff's Department ("Sheriff's Department"), asserting that certain Sheriff's Department

18   officers violated his civil rights when they stopped the vehicle he was driving and subsequently

19   arrested him.  He filed suit in federal court against the Sheriff's Department and five of its officers

20   on  March 21, 2012, under 42 U.S.C. § 1983 (civil action for deprivation of rights).  He then moved

21   for an Entry of Default on May 16, 2012, which the Clerk of the Court denied the following day.

22   *See* Motion for Entry of Default (Docket No. 19) and Declination of Default (Docket No. 20).

23   Thereafter, the Sheriff's Department filed a Motion to Dismiss or, alternately, a Motion for a More

24   Definite Statement (Docket No. 21), which was followed shortly by Plaintiff's Motion for Leave to

25   File a Motion for Reconsideration (Docket No. 22).  Having considered the parties' submissions and

26   oral argument, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to

27   Dismiss, and **DENIES** Plaintiff's Motion for Reconsideration, for the reasons set forth below.

28

**United States District Court**
For the Northern District of California

# I. **FACTUAL & PROCEDURAL BACKGROUND**

In his complaint and motion papers, Mr. Gates alleges the following facts.  On January 28, 2012, Mr. Gates was stopped by an officer of the Alameda County Sheriff's Department while driving a van in Hayward, California.[1]  In the course of what may have been a routine traffic stop,[2] Mr. Gates was searched, handcuffed, and seated in the back of a Sheriff's Department patrol car. Compl. (Docket No. 1) at  4.  He alleges that one of the officers on the scene told him he had been pulled over for "evading," but he does not describe what the officer meant by that term.  *Id*.  He claims that he was "illegally pulled over," and his complaint describes in detail his belief that he was properly operating his vehicle prior to being stopped.[3]  Pl.'s Decl. in Opp. to Defs.' Mot. to Dismiss ("Gates Decl.") (Docket No. 26) at 2.  It appears that Plaintiff's van was impounded by the Sheriff's Department shortly after his arrest.  *See* Compl. at 4; *see also* Defs.' Reply to Pl.'s Opp. to Mot. to Dismiss ("Defs.' Reply Brief") (Docket No. 27) at 3, Fn. 2.  Mr. Gates was then driven in the patrol car to the Santa Rita Jail in Dublin, California, where he was held for a period of approximately three days.[4]  *See* Compl. at  4; Gates Decl. at  4.  At the time when his handcuffs were removed (exactly when this occurred is not made clear in the complaint or Plaintiff's subsequent filings), Mr. Gates alleges that he had "marks on my wrist," a condition apparently witnessed by Sheriff's Deputy

---

[1]  Plaintiff's complaint and moving papers do not provide much of a factual description about what happened during his encounter with the Sheriff's Department's officers on January 28th, nor do they describe much in the way of what transpired after his arrest and incarceration in the Santa Rita Jail.  Indeed, the Defendants' Motion to Dismiss is primarily based on the vagueness of Mr. Gates' complaint.  Mot. to Dismiss at 5.

[2]  In the parties' Joint Case Management Conference (CMC) Statement (Docket No. 29), the Defendants state that Mr. Gates was pulled over in the course of a "traffic enforcement stop."  *See id.* at 4.  Plaintiff's complaint does not offer an opinion as to why he was pulled over.

[3]  Mr. Gates states the following:

"I was driving a legally registered 1995 Green Dodge Vandura on 01-28-12.  I wasn't speeding or driving erratic.  I was not intoxicated.  All blinkers . . . signal lights, brake lights were working properly."  *Id.*

[4]  Mr. Gates' complaint contains contradictory information about how long he was detained at the Santa Rita Jail.  At one point he states that he "was jailed from 1-28-12 until 03-02-12," a period of 35 days.  Compl. at 4.  Four lines later, he claims to have not spoken "to a Jugge or a Attorney while jailed, for 3 days."  *Id.*  Viewing the complaint in light of Plaintiff's subsequent filings, it seems more likely that he spent three days in the Santa Rita Jail, not 35.

United States District Court

For the Northern District of California

1    Chris Mears.  Compl. at 4.  He also alleges that at the time of his release, the employees at the Santa

2    Rita Jail failed to return all of the personal property he had with him at the time of his booking,

3    including certain articles of clothing he was wearing at the time of his arrest.  *See* Compl. at 4; Gates

4    Decl. at 4.  As a result, Mr. Gates states that he had to purchase replacement garments, including

5    slacks, socks, and shorts.  *Id.*

6         After his release from jail, Mr. Gates sought the return of his van from the Sheriff's

7    Department on several occasions over the course of a month or more, but was unsuccessful in his

8    efforts.  *See* Gates Decl. at 5-6.  It is unclear from the record why Plaintiff was unable to retrieve his

9    van, or whether the van is still being held by the Sheriff's Department.[5]  Plaintiff's complaint notes

10   that he had been "living in the van for a year" preceding its impoundment.  Compl. at  4.  With his

11   van impounded, Mr. Gates was left without sleeping accommodations and incurred five nights worth

12   of hotel costs before he could arrange longer-term living arrangements with a friend.  *See* Gates

13   Decl. at 5-6.  Plaintiff does not allege whether any subsequent criminal charges were ever filed

14   against him by the Alameda County District Attorney.  *See generally* Compl.; *see also* Mot. to

15   Dismiss at 3.

16        Plaintiff filed the instant suit against the Sheriff's Department and five of its officers and

17   employees on March 21, 2012.[6]  In his complaint, Mr. Gates demands compensatory and punitive

18   damages from the defendants totaling $600,000 under 42 U.S.C. § 1983 (civil action for deprivation

19   of rights) for "unlawful detention by a municipality . . . unlawful and false arrest . . . unlawful

20   seizure and destruction of property . . . [and for] racial profiling."  Compl. at 5.  He also lists non-

21   specific causes of action against the defendants under "Article 1802, Due Process, and Equal

22   Protection."  Compl. at 4.  His recitation of the facts in his complaint and moving papers suggest that

24        [5]  Plaintiff's CMC statement indicates that the California Department of Motor Vehicles may
25   be preventing the release of the van to Mr. Gates.  *See* Joint CMC Statement at 4 ("She [Sheriff's
     Technician Wolk] said my problems with the van was with the DMV.").

26        [6]  The individuals named in the suit are Sergeant Tom Rodrigues (named as "Sgt.
27   Rodriguez"), Deputy Colin Jones (named as "C. Jones"), Deputy Chris Mears (named as "C.
     Mears"), and Sheriff's Technician Ashli Wolk (named as "Technician Wok"), and an individual
28   unknown to the Sheriff's Department named as Deputy Allen, who may work or have worked at the
     Santa Rita Jail.  Compl. at 2; Defs.' Reply Brief at 1, 5.

1    he may also seek compensation for an injury to his wrists caused by the use of handcuffs. *See e.g.*

2    Compl. at 4; Gates Decl. at 3.

3        This Court granted Plaintiff's request to proceed *in forma pauperis* on April 11, 2012

4    (Docket No. 11).  On May 16, 2012, Mr. Gates filed a Motion for Entry of Default, which the Clerk

5    of the Court declined the following day.  Defendants filed their Motion to Dismiss or, alternately,

6    Motion for a More Definite Statement on May 21, 2012, which was followed the next day by

7    Plaintiff's Motion for Leave to File a Motion for Reconsideration.  This latter motion from Mr.

8    Gates asks the Court for leave to reconsider the declination of Plaintiff's May 16th Motion for Entry

9    of Default.

10                       **II.**    **DISCUSSION**

11    A.      <u>Motion to Dismiss – Legal Standard</u>

12        Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

13    failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  A motion to

14    dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks*

15    *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

16    must take all allegations of material fact as true and construe them in the light most favorable to the

17    nonmoving party, although "conclusory allegations of law and unwarranted inferences are

18    insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

19    2009).  Thus, "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"

20    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

21    action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

22        At issue in a 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether

23    the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint.

24    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  While "a complaint need not contain detailed factual

25    allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"

26    *Cousins,* 568 F.3d at 1067 (9th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads

27    factual content that allows the court to draw the reasonable inference that the defendant is liable for

28    the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v.*

1    *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but

2    it asks for more than sheer possibility that a defendant acted unlawfully."  *Id.*

3           Courts of this circuit recognize their unique duty "to ensure that pro se litigants do not lose

4    their right to a hearing on the merits of their claim due to ignorance of technical procedural

5    requirements."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  As such, the

6    pleadings of pro se litigants "are liberally construed, particularly where civil rights claims are

7    involved."  *Id.*  However, a court's "liberal interpretation of a civil rights complaint may not supply

8    essential elements of [a] claim that were not initially pled."  *Ivey v. Bd. of Regents of Univ. of*

9    *Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Thus, a *pro se* plaintiff's complaint which offers only

10   "vague and conclusory allegations of official participation in civil rights violations" does not state a

11   claim "sufficient to withstand a motion to dismiss."  *Id.*

12           1.    42 U.S.C. § 1983 Claims

13          Mr. Gates' complaint makes clear his belief "that [his] civil rights were violated" by officers

14   and employees of the Sheriff's Department, and he specifically cites 42. U.S.C. § 1983 as the basis

15   for at least some of his claims against the Defendants.[7]  Compl. at 4.  Section 1983 creates a civil

16   cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or

17   usage, of any State" deprives another person of any of their "rights, privileges, or immunities

18   secured by the Constitution and laws."  42 U.S.C. § 1983.  In order to state a claim for damages

19   under § 1983, a complaint must allege that (1) "the conduct complained of was committed by a

20   person acting under color of state law," and that " (2) "this conduct deprived a person of rights,

21   privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v.*

22   *Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327

23   (1986).  "Section 1983," the Supreme Court has stated, "is not itself a source of substantive rights,

24   but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v.*

25   *Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144, Fn. 3 (1979)).

26

27   ─────────────────────

28         [7]  Plaintiff does not appear to assert any state law claims.

1    Thus, "the first step in any [section 1983] claim is to identify the specific constitutional right

2    allegedly infringed." *Albright v. Oliver*, 510 U.S. at 271.

3           Defendants' argue that Mr. Gates' complaint should be dismissed because he "fails to plead,

4    as he must, facts showing an actual connection or link between the alleged actions of each of the

5    County Defendants and the constitutional deprivation allegedly suffered by Plaintiff."  Mot. to

6    Dismiss at 3.  Further, "other than labels and legal conclusions," the Defendants argue that this

7    "complaint does not allege sufficient facts which reasonably and plausibly [show] that *each*

8    defendant violated some constitutional right and caused Plaintiff to suffer some legally compensable

9    damage." *Id.* (emphasis in original).  Plaintiff's § 1983 claims will be addressed first as to the

10   Sheriff's Department and then as to the individually named officers and employees.

11                    a.      Municipal Liability

12          The caption to Plaintiff's complaint indicates that he is trying to sue the Alameda County

13   Sheriff's Department as a whole, in addition to the five named defendants, for civil rights violations

14   under § 1983.  Since the Sheriff's Department is an agency or department within the County of

15   Alameda, the proper defendant for Mr. Gates' municipal liability claim should be the County itself.

16   *See, e.g.*, *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (dismissing the

17   Santa Clara County Department of Corrections from a § 1983 action and noting that "[t]he County is

18   a proper defendant in a § 1983 claim, an agency of the County is not"); *Stump v. Gates*, 777 F. Supp.

19   808, 816 (D. Colo. 1991) (noting that, "although some courts have overlooked it, naming a

20   municipal department as a defendant is not an appropriate means of pleading a § 1983 action against

21   a municipality").

22          As against the County of Alameda, Plaintiff's § 1983 claim can succeed only if he

23   establishes that "the local government had a deliberate policy, custom, or practice that was the

24   moving force behind the constitutional violation [he] suffered." *AE v. County of Tulare*, 666 F.3d

25   631, 636 (9th Cir. 2012) (citing *Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir.2007)).  The Supreme

26   Court's holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), precludes a municipality

27   from being held liable under § 1983 solely on a respondeat superior theory. *See id.* at 691.  As the

28   Defendants note in their reply brief, Mr. Gates has not included any allegations indicating that the

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    County had such a policy, custom, or practice.  *See* Defs.' Reply Brief at 4-5.  Indeed, there are no

2    allegations in the complaint that directly address the conduct of the Sheriff's Department itself (as

3    opposed to its officers and employees) or the County of Alameda.  Without such allegations,

4    Plaintiff's complaint as against the County fails to plead an essential element of a § 1983 claim for

5    municipal liability.  Therefore, Plaintiff's § 1983 claim against Alameda County is DISMISSED

6    with leave to amend.  Plaintiff may amend if, for instance he alleges in good faith facts establishing

7    a policy or custom with respect to the impoundment of his van (discussed below).[8]

8                   b.    Equal Protection and Due Process Claims

9           Broadly construed, Plaintiff's complaint alleges that the conduct of the five individual

10   Alameda County Sheriff's Department officers violated his equal protection and due process rights

11   as guaranteed by the U.S. Constitution, thereby giving rise to a claim under § 1983.  *See* Compl. at

12   4.  The Supreme Court has held, "on the merits, to establish *personal* liability in a § 1983 action, it is

13   enough to show that the official, acting under color of state law, caused the deprivation of a federal

14   right."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Construing Plaintiff's allegations as true,

15   which a court must in the context of a Rule 12(b)(6) motion, it is apparent that Mr. Gates'

16   complaints flow from conduct "committed by [persons] acting under color of state law."  *See*

17   *Parratt*, 451 U.S. at 535.  His complaint and moving papers describe how he was stopped and

18   arrested by employees of the Sheriff's Department acting in their capacity as law enforcement

19   officers.  *See* Compl. at 3-4.  He alleges that the marks on his wrists were caused when Deputy Jones

20   handcuffed him, and that employees of the Santa Rita Jail failed to return certain articles of his

21   clothing when he was released from that facility.  *Id.*  He also alleges that it was Sheriff's

22   Department employees who impounded his van.  *Id.*; *see also* Gates Decl. at 5-6.  Thus, Mr. Gates'

23

24   _____

25           [8]  As to Defendants' argument that Plaintiff has not identified the role of each individual
     defendant with respect to each violation, Plaintiff needs to demonstrate that each "defendant
26   deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United
     States" in order to succeed on the merits of his claim.  See *Briley v. State of Cal.*, 564 F.2d 849, 853
27   (9th Cir. 1977).  However, given Plaintiff's lack of access to relevant evidence and the Court's lenity
     towards *pro se* litigants, the Court declines to dismiss any of the individually named Defendants at
28   this stage.

**United States District Court**
For the Northern District of California

1 complaint describes the Defendants' conduct with sufficient detail to satisfy this first requirement

2 for stating a § 1983 claim.

3                         1.    <u>Equal Protection</u>

4       It is with the second element that Plaintiff's complaint runs into difficulty.  Mr. Gates cites

5 "due process and equal protection" as grounds for his § 1983 action.  In order to state a claim under

6 § 1983 for "a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must

7 show that the defendants acted with an intent or purpose to discriminate against the plaintiff based

8 upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

9 2001) *(citing Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998)).  "Intentional

10 discrimination means that a defendant acted at least in part because of a plaintiff's protected status."

11 *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994).  Here, Plaintiff merely states his

12 belief that he was 'racially profiled' by the Sheriff's Department.  Compl. at 4.  Mr. Gates offers no

13 facts to show that any of the Defendants acted in a discriminatory manner, or that his treatment at

14 the hands of the Sheriff's Department was somehow different on account of his membership in a

15 protected class.  The conclusory assertion is not supported by any specific alleged facts which would

16 make the claim plausible.  As such, Plaintiff's § 1983 claim is DISMISSED with leave to amend

17 insofar as it is based on a violation of his rights under the Equal Protection Clause of the U.S.

18 Constitution.

19                         2.    <u>Substantive Due Process</u>

20       Plaintiff's complaint with respect to violations of  his due process rights is similarly vague.

21 Rendering his complaint as raising a substantive due process claim, it is difficult to see how the facts

22 described amount to "conduct that 'shocks the conscience,' . . . or interfere[] with rights 'implicit in

23 the concept of ordered liberty.'"  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting

24 *Rochin v. California*, 342 U.S. 165, 172 (1952).  Broadly speaking, cases construing the Fourteenth

25 Amendment's Substantive Due Process Clause have been quite limited in scope, and "have for the

26 most part been accorded to matters relating to marriage, family, procreation, and the right to bodily

27 integrity."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  In *Albright*, the Supreme Court noted, "as

28 a general matter," its "reluctan[ce] to expand the concept of substantive due process because the

1   guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*

2   at 271-272.

3        The Supreme Court has taken an even stricter stance towards viewing claims for

4   constitutional wrongs as sounding in substantive due process when the wrong complained of could

5   more aptly be placed within "the specific guarantees of the various provisions of the Bill of Rights."

6   *Id.* at 273.  In *Albright*, the Court rejected a petitioner's claim that his arrest without probable cause

7   violated his substantive due process rights.  Holding instead that "it is the Fourth Amendment . . .

8   under which petitioner Albright's claim must be judged," the Court stated "where a particular

9   Amendment provides an explicit textual source of constitutional protection against a particular sort

10  of government behavior, that Amendment, not the more generalized notion of substantive due

11  process, must be the guide for analyzing these claims." *Id.*  Likewise, the Court in *Graham v.*

12  *Connor*, 490 U.S. 386 (1989), refused to construe a petitioner's excessive force claim as a violation

13  of his substantive due process rights when it could more appropriately be framed as a violation of his

14  rights under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. at 395 (holding that "because

15  the Fourth Amendment provides an explicit textual source of constitutional protection against this

16  sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion

17  of "substantive due process," must be the guide for analyzing these claims.").  As noted below,

18  Plaintiff's claims are more appropriately analyzed as a Fourth Amendment and procedural due

19  process claims.  In light of Supreme Court's precedent in this area of law, Plaintiff's § 1983 claim is

20  DISMISSED without leave to amend insofar as it is based on a violation of his substantive due

21  process rights under the Due Process Clause of the U.S. Constitution.

                        3.        Procedural Due Process

23       To state a procedural due process claim, Mr. Gates would have to allege two "distinct

24  elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a

25  denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,

26  149 F.3d 971, 982 (9th Cir. 1998).  As pled, it is difficult to see specific instances where Mr. Gates's

27  complaint alleges the denial of "adequate procedural protections" during his encounter with the

28  Sheriff's Department.  However, broadly construing the complaint, the Court finds that Mr. Gates

1  has sufficiently stated a claim that his procedural due process rights were violated when the

2  Defendants impounded his van.

3     "Due process, unlike some legal rules, is not a technical conception with a fixed content

4  unrelated to time, place and circumstances." *Cafeteria & Rest. Workers Union, Local 473, AFL-*

5  *CIO v. McElroy*, 367 U.S. 886, 895 (1961).  Rather, it is a "flexible [concept] and calls for such

6  procedural protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334

7  (1976).  The Supreme Court has specified three factors for courts to consider in determining what

8  process is due under this provision of the Constitution.  They are:

9      First, the private interest that will be affected by the official action;
    second, the risk of an erroneous deprivation of such interest through
10     the procedures used, and the probable value, if any, of additional or
    substitute procedural safeguards; and finally, the Government's
11     interest, including the function involved and the fiscal and
    administrative burdens that the additional or substitute procedural
12     requirement would entail.

13 *Id.* at 335.

14    Applying these factors is necessarily a fact-intensive endeavor.  In the Ninth Circuit, panels

15 considering whether a "pre-tow" hearing is required as a matter of procedural due process before the

16 police can impound a vehicle have held that no such hearing was required where a vehicle was

17 parked on a city street over 72 hours in violation of a municipal ordinance (*Soffer v. City of Costa*

18 *Mesa*, 798 F.2d 361 (9th Cir. 1986)), or where a vehicle was towed by police and the owner did not

19 allege that his vehicle was legally parked or that he was without notice that the vehicle was subject

20 to removal (*Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982)).  In contrast,

21 in a class action suit challenging the process afforded under a California ordinance that authorized

22 the removal of privately owned vehicles from streets and highways without prior notice or an

23 opportunity for a hearing, another Ninth Circuit panel held that *not* affording a "post-tow" hearing

24 where, among other deficiencies, the ordinance at issue "establish[ed] no procedure to assure

25 reliability of the determination that the seizure and detention [were] justified," violated procedural

26 due process.  *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977).  A

27 fourth panel, faced with assessing "whether a pre-deprivation hearing is required [to satisfy

28 procedural due process] for an impoundment from the driveway of the owners' home," determined

United States District Court

For the Northern District of California

1   that the question "[could] not be resolved without more factual development and a more detailed

2   analysis of the competing interests involved." *Miranda v. City of Cornelius*, 429 F.3d 858, 867 (9th

3   Cir. 2005). However, the *Miranda* panel did note, in dicta, its view that "impoundment of a vehicle

4   left in a public place or a vehicle for which there is no licensed driver . . . presumably would not

5   require pre-deprivation notice and a pre-seizure hearing because the burden of such procedures

6   would vitiate the legitimate purposes of the impoundment." *Id.*

7        The facts as alleged in Plaintiff's complaint and moving papers provide few details of the

8   procedures used by the Sheriff's Department to afford Mr. Gates "the opportunity to be heard at a

9   meaningful time and in a meaningful manner" regarding the impoundment of his vehicle. *Mathews*

10  *v. Eldridge*, 424 U.S. at 333. Mr. Gates alleges that he unsuccessfully sought the return of his van

11  from the Sheriff's Department on several occasions over the course of a month or more. Gates Decl.

12  at 5-6. He also alleges that he "was never cited or told why [the Defendants] impounded and seized

13  [his] vehicle," and that at one point the Defendants "finally told me I could get the vehicle (van) if I

14  pay $3000." *Id.* at 6. He did not indicate whether there was an expeditious process for repossessing

15  his van, whether the Defendants afforded him a hearing to contest the impoundment, or whether the

16  Defendants have administratively reviewed the handling of his case after impounding the van. Nor

17  is it evident whether a third party such as the DMV controls the situation.

18        Considering the *Eldridge* factors above in the context of this case, the Court finds that the

19  "private interest affected by the official action" is of the utmost importance. Indeed, there are few

20  other situations where the impact to one's private interest would be more detrimental than in a case

21  where the government deprives an otherwise homeless person of his live-in vehicle. However, not

22  having a well-developed record regarding the other two factors – the risk of an erroneous

23  deprivation of Plaintiff's interest under current procedures and the nature of the government's

24  interest – it is difficult at this early stage to make an *Eldridge* style determination as to whether

25  Plaintiff's procedural due process rights have indeed been violated. The Court notes, however, that

26  Defendants have not asked the Court to take judicial notice of any laws or public documents which

27  would detail the procedure used here, procedures which could establish due process. Construing

28  Plaintiff's complaint as alleging generally that the government's interest in impounding the vehicle

United States District Court

For the Northern District of California

1   was minimal (a reasonable construction given Mr. Gates's statement that he parked the van legally

2   and had not violated any laws), and that the government did not afford a person in his circumstances

3   adequate procedural safeguards, Plaintiff's procedural due process claim is sufficiently well pled to

4   survive a motion to dismiss under Rule 12(b)(6).  Construing Mr. Gates' complaint in such a light is

5   particularly appropriate here, given this Court's duty "to ensure that pro se litigants do not lose their

6   right to a hearing on the merits of their claim due to ignorance of technical procedural

7   requirements."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  This does not

8   preclude Defendants from later moving for summary judgment on this claim.  Therefore, this Court

9   DENIES Defendants' motion to dismiss the procedural due process component of Plaintiff's § 1983

10  claim insofar as it challenges the impoundment of his vehicle.  However, the Court DISMISSES

11  with leave to amend all other procedural due process claims advanced in Plaintiff's complaint.

12              c.       Unlawful Search, Seizure, and Excessive Force Claims

13              Plaintiff's complaint makes clear that he bases part of his § 1983 claim on alleged violations

14  of his Fourth Amendment rights.  The complaint specifically lists "false imprisonment" and "illegal

15  seizure of property" as underlying Mr. Gates's cause of action, and as part of his "demand for relief"

16  he cites a First Circuit case involving a § 1983 claim for the unlawful detention of individuals by a

17  municipality in Puerto Rico (*Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36 (1st Cir.

18  2009)).  Compl. at 4-5.  Mr. Gates's complaint clearly indicates his desire to seek compensation

19  from the five named officers for damages resulting from what he believes was an unlawful stop of

20  his vehicle and seizure of his van.  His complaint and moving papers describe in some detail his

21  belief that he was initially stopped by the police without probable cause and that his vehicle was

22  impounded unlawfully.  *See e.g. supra* Fn. 3; Gates Decl. at 2 ( "I was illegally pulled over . . ."),

23  Compl. at 4 ("My van was illegally impounded").  Thus, Plaintiff has given clear notice of his intent

24  to pursue a § 1983 claim rooted in the alleged violation of his Fourth Amendment rights.

25              The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure

26  in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S.

27  Const., Amdt. 4.  Interpreting this provision, the Supreme Court has held that the "temporary

28  detention of individuals during the stop of an automobile by the police, even if only for a brief

United States District Court

For the Northern District of California

period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The Supreme Court has stated that "as a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren, supra*, at 810. Whether or not the Sheriff's Department's officers, and in particular Deputy Colin Jones, had probable cause to stop him in the first place is precisely what Mr. Gates alleges in this case. He has stated a Fourth Amendment claim sufficient to survive under Rule 12(b)(6).

Similarly, whether or not Mr. Gates's van was properly seized and impounded following his arrest may turn on the lawfulness of his arrest. While California law permits police officers to seize and impound vehicles following the arrest of the vehicle's driver, *see, e.g.*, Cal. Veh. Code § 22651(h)(1),[9] if the arrest is invalid it is not clear whether a seizure can constitutionally be effectuated under this section. Absent a contrary showing by Defendants, the Court will not at this point dismiss this claim.

However, the Court finds that Plaintiff has not sufficiently pled a § 1983 claim based on the excessive use of force by the individually named Sheriff's Department officers. As with other Fourth Amendment claims, an excessive use of force claim under § 1983 involves a "reasonableness inquiry." *Graham v. Connor*, 490 U.S. 386, 397 (1989). A court must ask "whether the officers' actions [were] "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," and must also engage in a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396-397. Here, Plaintiff alleges no severe or serious injury and thus fails to state a plausible claim of excessive force.[10] *Cousins*, 568

---

[9] This code section states that a peace officer "may remove a vehicle located within the territorial limits in which the officer or employee may act . . . [w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." *Id*.

[10] Mr. Gates states that he had "marks on my wrist" when his handcuffs were removed, and alleges that the marks on his wrists were caused when Deputy Jones handcuffed him. Compl. at 4. He offers no facts to suggest that the "marks" indicated that he had been injured while wearing the handcuffs, nor any facts showing the extent of his injuries, if any.

United States District Court
For the Northern District of California

F.3d at 1067 (9th Cir. 2009).  Therefore, the Court DISMISSES with leave to amend Plaintiff's §

1983 claim insofar as it is based on the Defendants' use of excessive force.

    2.    <u>Article 1802</u>

    Plaintiff's complaint also cites "article 1802" as either a cause of action or basis for recovery

of damages against the Defendants.  Compl. at 4.  It is entirely unclear what "article 1802" refers to,

let alone whether it provides Plaintiff with the basis for an action against the Defendants.

Defendants' motion and supporting briefs do not separately discuss "article 1802," likely because

they are just as puzzled as to how it factors into the present suit.  It is possible that "article 1802"

refers to an article of the Puerto Rico Civil Code, especially in light of Plaintiff's citation in the

complaint to *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36 (1st Cir. 2009), a case

involving a § 1983 claim for the unlawful detention of individuals by a municipality in Puerto Rico.

The Court fails to discern any legal claim or the factual basis therefor.  Accordingly, the Court

DISMISSES the claim without leave to amend.

B.    <u>Motion for Leave to File a Motion for Reconsideration</u>

    Plaintiff filed a Motion for Leave to File a Motion for Reconsideration one day after the

Defendants' filed their Motion to Dismiss.  *See* Docket No. 22.  This latter motion from Mr. Gates

asks the Court for leave to reconsider its denial of his May 16th Motion for Entry of Default.  The

May 16th Motion for Entry of Default stated that "more than 21 day's had elapse since the service of

the said complaint and summons has been served on said defendant and no answer there to have

been served on said plaintiff."  Pl.'s Mot. for Entry of Default (Docket No. 21) at 2.  In actuality,

only fifteen days had elapsed since substitute service was made on the Defendants, service having

been effected and recorded on May 1, 2012.  *See e.g.* Summons Returned Executed by Archie Lee

Gates (Docket No. 15).  Following the 21 day time period set by Fed. R. Civ. P. 12(a)(1)(A)(I), the

Defendants had until May 22, 2012, to respond to Plaintiff's complaint.  Indeed, the Clerk of the

Court's recording of Defendants' service on the docket sheet for this case notes that their answer

was not due until May 22nd.  *See* Civil Docket For Case #: 3:12-cv-01429-EMC, *Gates v. Alameda*

*County Sheriff's Department et. al.*, entries for Docket Nos. 13-18.  The Clerk of the Court

1   summarily declined Plaintiff's motion to enter default in a Clerk's Notice entered on May 17, 2012.

2   Clerk's Notice: Declination Of Default (Docket No. 20).

3       Plaintiff's motion seeking leave to reconsider the declination of default offers no explanation

4   as to why the Court should reconsider this earlier decision.  Attached to Plaintiff's motion are three

5   receipts apparently showing repairs Mr. Gates performed to his van, a receipt showing the payment

6   of vehicle registration fees, and a plastic bag apparently given to Mr. Gates at the time of his release

7   from the Santa Rita Jail.  *See* Pl.'s Mot. for Leave to File a Mot. for Reconsideration.  It is unclear

8   how these items relate to Plaintiff's request for leave to reconsider the Clerk's declination to enter

9   default judgment.  The motion itself offers no argument as to why reconsideration is warranted.

10  Quite the opposite, it acknowledges that service on the Defendants was made "on 5-1-12," less than

11  21 days before Mr. Gates' Motion for Entry of Default.  *Id.* at 1.  Since Mr. Gates's current motion

12  presents no cognizable basis for reconsidering the declination of his earlier Motion for Entry of

13  Default, Plaintiff's Motion for Leave to File a Motion for Reconsideration is hereby DENIED.

### III.   CONCLUSION

15      For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

16  Defendants' Motion to Dismiss, and **DENIES** Plaintiff's Motion for Reconsideration.  Plaintiff's

17  claim against Defendant Alameda County is DISMISSED with leave to amend.  The following

18  components of Plaintiff's claim against the individually named Defendants are DISMISSED with

19  leave to amend:

20      1.   Equal Protection claims;

21      2.   Procedural due process claims except as related to the impoundment of the vehicle

22  (as to which the motion to dismiss is denied); and

23      3.   Excessive force claims.

24  The following components of Plaintiff's claim against the individually named Defendants are

25  DISMISSED without leave to amend:

26      1.   Substantive due process claims; and

27      2.   Article 1802 claims.

28

United States District Court
For the Northern District of California

15

Defendants' Motion to Dismiss is DENIED insofar as it relates to Plaintiff's claim against the individually named Defendants for:

     1.     The unlawful seizure of his person and property; and

     2.     The denial of procedural due process as related to the impoundment of the vehicle.

This Order disposes of Docket Nos. 21 and 22.


     IT IS SO ORDERED.


Dated:  August 14, 2012

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

16